UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| UNITED STATES OF AMERICA | CIVIL ACTION |
|---|---|
| VERSUS | NO: 08-0286 |
| ERIN SCHMIDT, KEITH NUNEZ, AND MICHAEL O'KEEFE, SR. | SECTION: "S" (4) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the United States of America's motion to reconsider the order of June 20, 2008, granting Michael O'Keefe, Sr.'s motion to dismiss the complaint for failure to state a claim is **GRANTED**. (Document #15.)

**IT IS FURTHER ORDERED** that the order dismissing the case is **RESCINDED**, (document #13), and O'Keefe's motion to dismiss is **DENIED**. (Document #7.)

## I. BACKGROUND

Michael O'Keefe, Sr. served as a Louisiana State Senator from 1960-1984, and as President of the Senate from 1976-1983. Upon retirement, O'Keefe received a pension from the Louisiana State Employee's Retirement System (LASERS) in the amount of $2,500 per month.

On March 21, 1996, O'Keefe was convicted of one count of conspiracy to commit mail and wire fraud, six counts of mail and wire fraud, and ten counts of money laundering. O'Keefe

was sentenced to a term of imprisonment of 235 months and ordered to pay restitution to Physicians' National Risk Retention Group in the amount of $1,174,849.

On March 24, 1999, shortly before he began serving his sentence, O'Keefe requested that LASERS send his pension payments by paper check through the United States mail, rather than the previous method of electronic direct deposit. From November 2001 through November 2004, the checks from LASERS were deposited into the Whitney National Bank account of Keith Nunez, O'Keefe's friend. Nunez received a total of $92,645.55 in LASERS payments. From December 2004 through August 2007, the checks from LASERS were deposited into Erin Schmidt's account at Capital One Bank. Erin Schmidt is O'Keefe's daughter and the wife of O'Keefe's co-defendant, Eric Schmidt. Erin Schmidt received a total of $84,341.34 in LASERS payments.

On December 13, 2007, the government filed applications for writs of execution against Nunez's Whitney Bank account and Schmidt's Capital One account to recover the LASERS payments. The Whitney account had been liquidated and closed, and the Capital One account had a balance of $2,927.38.

The United States filed a nine-count, amended civil complaint against Schmidt, Nunez, and O'Keefe. The government alleges that the transfers of LASERS payments to Nunez after the debt to the United States was incurred were fraudulent, in violation of the Federal Debt Collection Procedure Act (FDCPA), 28 U.S.C. § 3304(a)(1) (constructive fraud)[1] (count one); the United States is entitled to a money judgment against Nunez under the FDCPA in the amount

---

[1] The original complaint alleged actual fraud

2

of $92,645.55 (count two); the United States has a right to revoke and annul the transfers to Nunez in a revocatory action against transfers under the Louisiana Civil Code (count three); the United States is entitled to receive a money judgment against Nunez in the amount of $92,645.55 under the Louisiana Civil Code (count four); the negotiation and deposit of LASERS checks into Schmidt's Capital One bank account constituted a series of transfers as defined under the FDCPA (count five); the United States is entitled to a money judgment against Schmidt under the FDCPA in the amount of $81,413.96 (the amount transferred less the amount recovered under the writ of execution to Capital One Bank) (count six); the United States has a right to revoke and annul the transfers to Schmidt under the Louisiana Civil Code because the transfers to Schmidt are considered acts of O'Keefe that increased his insolvency after the debt was incurred (count seven); the United States is entitled to a money judgment against Schmidt in the amount of $81,413.96 under the Louisiana Civil Code (count eight); and O'Keefe is joined as a necessary party to the revocatory action.

O'Keefe filed a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] The court granted the motion and dismissed the complaint before the government filed the amended complaint. The government filed a motion to reconsider the dismissal in light of the amended complaint.

## II. DISCUSSION

### A. Legal standard

---

[2] O'Keefe filed a *pro se* motion to dismiss. He may not represent the interests of Nunez and Schmidt.

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)). "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not the plaintiff pleads itself out of court." E.E.O.C. v. Concentra Health Services, Inc., 496 F.3d 773, 777 (7th Cir. 2007) (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)).

**B. Constructive fraud**

Section 3304(a)(1)[3] addresses a fraudulent transfer as to a debt to the United States as follows:

> (a) **Debt arising before transfer.–** Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if–
>   (1)(A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>     (B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

"Transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary,

---

[3] In its complaint, the government does not identify the section of the FDCPA under which the claim is brought. In the memorandum, the government cites § 3304(a)(1)(A), but not (B), which addresses insolvency. A reading of the complaint, memorandum, and statute indicates that the claim is brought under subsections (a)(1)(A) and (B).

4

of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." 28 U.S.C. § 3301(6). "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." 28 U.S.C. § 3303(a). "[A] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 28 U.S.C. § 3302.

The government alleges that the transfer of pension funds was made beginning November 2001 through August 2007, after the debt to the United States was incurred on January 12, 1999, the date of sentencing; that no reasonably equivalent value was given in exchange for the transfer; and O'Keefe was insolvent during the period of transfer because a total balance of $1,167,064 in restitution remains due and owing. Taking the allegations in the complaint as true, the government has pleaded enough facts to state a claim for relief that is plausible on its face.[4]

## C. Revocatory action under the Louisiana Civil Code

Louisiana Civil Code article 2036 provides that "[a]n obligee has a right to annual an act of the obligor . . . made or affected after the right of the obligee arose, that causes or increases

---

[4] O'Keefe raises several defenses to the government's complaint. The court does not consider the defenses in a Rule 12(b)(6) motion. The court examines the complaint to determine if there is a plausible claim for relief beyond the speculative level. The defendants will have an opportunity to present defenses as the case proceeds.

the obligor's insolvency." The Revision Comment (d) to the article states that [t]he term 'act' . . . encompasses contracts, acts of payment, and any 'contrivance' employed by the obligor."

The government alleges that it has a right to bring a revocatory action under article 2036 because the payments to Nunez and Schmidt constituted acts that occurred after the debt to the United States was incurred and that the acts increased O'Keefe's insolvency. Taking the allegations in the complaint as true, the government has pleaded enough facts to state a claim for relief that is plausible on its face.

### III. CONCLUSION

The complaint describes the claim with sufficient detail to give the defendants fair notice of the claim, and the allegations plausibly suggest that the government has a right to relief. Accordingly, O'Keefe's Rule (12)(b)(6) motion to dismiss the fraudulent conveyance claim and the revocatory action is denied.

New Orleans, Louisiana, this   30th day of January, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**